John **MOORHEAD**, Frank S. Farrell, **individually and on behalf of others similarly situated, Appellants,**

Charterhouse, Inc.,

v.

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Piper Jaffray & Hopwood, Inc., Touche Ross & Co., Appellees.**

No. 91–1192.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 14, 1991.

Decided Nov. 8, 1991.

Samuel D. Heins, Minneapolis, Minn., argued (Martin D. Munic, Minneapolis, Minn., and Herbert E. Milstein and Lisa M. Mezzetti, Washington, D.C., on brief), for appellants.

Michael J. Bleck, Minneapolis, Minn., argued (Craig W. Gagnon and Laurel A. Graham, on brief), for appellee.

Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

McMILLIAN, Circuit Judge.

John Moorhead and Frank S. Farrell (hereinafter plaintiffs), individually and on behalf of other purchasers of bonds used to finance construction of a residential retirement center, appeal from a final order entered in the District Court[1] for the District of Minnesota granting summary judgment in favor of Touche Ross & Co. (hereinafter defendant). *Moorhead v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, Civil File No. 3–88–0218 (D.Minn. Sept. 28, 1990) (order granting summary judgment). For reversal plaintiffs argue the district court erred in holding (1) any misrepresentations or omissions were negated or disclosed by specific cautionary language in the feasibility study and (2) they could not bring a professional malpractice action against defendant in the name of the retirement center. For the reasons discussed below, we affirm the order of the district court.

Most of the facts are not disputed. In 1979 a local task force associated with Rochester Methodist Hospital decided to build a residential retirement center in Rochester, Minnesota. Defendant was retained as feasibility consultant for the project. Construction of the retirement center, Charterhouse, Inc., was to be financed with $39 million of municipal bonds issued by the City of Rochester. The bonds were to be repaid out of the reve-

---

**1.** The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

nues, fees and other income of the retirement center. On May 20, 1983, defendant issued a final financial feasibility study which was attached as an exhibit to the offering memorandum for the bonds. The feasibility study was generally favorable and analyzed the future economic viability of the proposed retirement center and was based upon certain financial and marketing assumptions. The bonds were issued in June 1983. The retirement center was completed and opened in January 1985. However, within a year, the retirement center experienced serious financial problems and defaulted on interest payments to its bondholders. In November 1986 the retirement center filed a Chapter 11 petition in bankruptcy. Under the reorganization plan, the bondholders received 60¢ per dollar of debt.

In April 1988 plaintiffs filed this action against defendant and the bond underwriters in federal district court, alleging federal securities fraud and state law claims for misrepresentation, fraud and professional malpractice. The complaint alleged that defendant and the underwriters knowingly or recklessly issued the feasibility study which misrepresented that sufficient revenues would be generated to pay back the bond debt. Plaintiffs alleged that they lost over $15.6 million in principal and that their total damages, including lost investment interest through maturity of the bonds, exceeded $50 million. The district court certified a class as to the federal securities fraud claim only.

In December 1989 the district court approved a settlement between plaintiffs and the underwriters and two law firms. In September 1990 the district court granted summary judgment in favor of defendant on the federal securities fraud claim. The district court concluded that plaintiffs had failed to show either that the feasibility study contained any material misrepresentations or omissions of fact, particularly in light of the inclusion of specific cautionary language and the disclosure of the underlying assumptions in the feasibility study, or that defendant had acted intentionally or recklessly to deceive, manipulate or defraud. Slip op. at 12–16. The district

court also concluded that plaintiffs could not bring a professional malpractice claim against defendant in the name of the retirement center because the discharge clause in the revised reorganization plan did not constitute an assignment under Minnesota law. *Id.* at 5–7. The district court later dismissed plaintiffs' pendent state law claims without prejudice. This appeal followed.

## FEDERAL SECURITIES FRAUD

■ Plaintiffs first argue the district court erred in granting summary judgment because there was sufficient evidence of materiality and scienter for a jury to return a verdict in their favor. We review a grant of summary judgment de novo. The question before the district court, and this court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

Plaintiffs argue the record showed defendant recklessly prepared the feasibility study. They argue defendant made misrepresentations, omitted material facts and made economic predictions with reckless disregard for their validity. The district court, however, rejected plaintiffs' federal securities fraud claim because the feasibility study contained a number of risk statements, detailed cautionary language and disclosures about the underlying economic assumptions, any of which could have affected the retirement center's ability to pay back the bonds. We agree with the district court and hold that plaintiffs could not base a federal securities fraud claim on any misrepresentation or omission in the feasibility study which was addressed by the repeated, specific warnings of significant risk factors and the disclosures of underlying factual assumptions

also contained therein.[2] *See, e.g., In re Convergent Technologies Securities Litigation,* 948 F.2d 507, 515–17 (9th Cir.1991) *aff'g* 721 F.Supp. 1133 (N.D.Cal.1988); *Luce v. Edelstein,* 802 F.2d 49, 56 (2d Cir. 1986); *Polin v. Conductron Corp.,* 552 F.2d 797, 806 n. 28 (8th Cir.), *cert. denied,* 434 U.S. 857, 98 S.Ct. 178, 54 L.Ed.2d 129 (1977); *Feinman v. Schulman Berlin & Davis,* 677 F.Supp. 168, 170 (S.D.N.Y.1988); *cf. Huddleston v. Herman & MacLean,* 640 F.2d 534, 544 (5th Cir.1981) (boilerplate warning of risk held ineffective), *aff'd in relevant part and rev'd in part on other grounds,* 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983).

## ASSIGNMENT

■ Plaintiffs also argue the district court erred in holding that plaintiffs could not bring a professional malpractice claim against defendant in the name of the retirement center. Plaintiffs argue that the re-

tirement center consented to be named as a nominal party in future litigation in the discharge clause of the revised reorganization plan and that this consent operated as an assignment to plaintiffs of its malpractice claims against defendant. The district court concluded that the language used in the discharge clause was not ambiguous and that, under Minnesota law, the retirement center's consent to be named as a nominal party did not constitute an assignment to plaintiffs of its claims against defendant. *Moorhead v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* Civil File No. 3–88–0218, slip op. at 5–7. The district court specifically held plaintiffs' reliance on the term "nominal party" was insufficient evidence of an assignment. *Id.* at 5–6. We review district court determinations of state law de novo. *Salve Regina College v. Russell,* —— U.S. ——, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991). We agree with the district court's analysis of the

---

**2.** For example, the feasibility study contained the following specific cautionary language on page I–6:

> We believe that the underlying assumptions provide a reasonable basis for management's forecast. However, some assumptions inevitably will not materialize and unanticipated events and circumstances may occur; therefore, the actual results achieved during the forecast periods will vary from the forecast and the variations may be material.
>
> The accompanying financial forecast indicates that sufficient funds will be generated to meet Charterhouse's operating expenses, working capital needs and other financial requirements, including the debt service requirements associated with the proposed Series 1983 Bond issue, during the forecast periods. However, the achievement of any financial forecast is dependent upon future events, the occurrence of which cannot be assured.

The feasibility study also included the following specific cautionary language on page III–28:

> No representations or assurances can be made that sufficient revenues will be realized by the Corporation [referring to Charterhouse] in amounts sufficient to pay maturing principal and interest on Series 1983 Bonds. Future economic and other conditions, including demand for the Charterhouse services, the residents' ability to meet their financial obligations under the residency agreement, the economic developments in Olmsted County, competitive facilities, third party reimbursement and government regulations, may adversely affect revenues and, consequently, payment of principal and interest.

. . . .

> Factors such as increasing maintenance fees which could affect occupancy, delays in construction of the facility, differences in interest rates from those expected, employee strife disrupting operations, construction costs and the sustained employment of professional management of the facility are all items to which the forecast financial statements are highly sensitive.

In addition, the official statement at 51–54 included a section which reviewed certain bondholders' risks, including the failure to achieve or maintain turnover or occupancy:

> The ability of the Corporation to pay debt service on the Series 1983 Bonds depends upon its ability to market the residential units. The economic feasibility of the Project depends upon the ability of the Corporation to attract sufficient residents and to maintain substantial occupancy of the Project throughout the term of the Series 1983 Bonds. Although a marketing plan has been prepared and marketing efforts have commenced, it is not expected that all residential units will be reserved by the closing of the sale of the Series 1983 Bonds or by completion of the Project. There can be no assurance that the levels of occupancy assumed in the Financial Feasibility Study will be obtained. The ability of the Corporation to market residential units is dependent upon the existence of the medical facilities in the City and the ability of such facilities to continue to attract significant numbers of patients from outside of the immediate geographical area.

applicable state law and hold the retirement center's consent to be named as a nominal party did not constitute an assignment of its rights or claims under Minnesota law.

Accordingly, the order of the district court is affirmed.