**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 96-4132EM

_____

| | | |
|---|---|---|
| In re NationsMart Corporation Securities Litigation | * | |
| | * | |
| | * | |
| | * | |
| Jack Carlon, Helen S. Palmquist, Brian Palmquist, John D. Palmquist, | * | |
| | * | |
| | * | |
| Appellants, | * | |
| | * | |
| v. | * | On Appeal from the |
| | * | United States District Court |
| | * | for the Eastern District |
| Michael E. Thaman, Alice E. | * | of Missouri. |
| Brueggemann, S. Leslie Flegel, | * | |
| Mel A. Friedman, Alan G. Johnson, | * | |
| Franklin A. Jacobs, S. Lee Kling, | * | |
| Michael J. Dunlap, RAS Securities | * | |
| Corp., Pauli & Company, Inc., | * | |
| and NationsMart Corporation, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: September 11, 1997

Filed: November 21, 1997

_____

Before RICHARD S. ARNOLD, Chief Judge, FLOYD R. GIBSON and BEAM, Circuit Judges.

_____

RICHARD S. ARNOLD, Chief Judge.

In this case, Jack Carlon, Helen S. Palmquist, Brian Palmquist, and John D. Palmquist appeal the District Court's dismissal of their class action brought under Sections 11 and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k(a) and 77(*o*) (1994); Section 12(2) of the Securities Act, 15 U.S.C. § 77*l* (2) (1994); and Sections 10(b) and 20 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t (1994). This litigation involves alleged misrepresentations, misstatements, and omissions made in connection with an initial public offering on December 22, 1993, of shares in NationsMart, a Missouri corporation formed to manage laundry, dry-cleaning, and shoe-repair centers in large retail stores such as Wal-Mart and Kmart. The defendants in the action below, and the appellees before this court, include NationsMart; eight of NationsMart's officers and directors; and NationsMart's two lead underwriters, RAS Securities Corporation and Pauli & Company, Inc.[1] The District Court dismissed the plaintiffs' complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and for failure to plead fraud with particularity under Federal Rule 9(b). We now affirm in part and reverse in part.

I.

NationsMart was formed in 1992 with the goal of applying the low-price, one-stop shopping concept, made successful by Wal-Mart and Kmart "supercenters," to the dry-cleaning, laundry, and shoe-repair markets. After filing a Registration Statement and a Prospectus with the Securities and Exchange Commission ("SEC"), NationsMart

---

[1] The plaintiffs also filed Securities Act and Securities Exchange Act claims against 25 additional underwriters in a complaint filed on July 12, 1995. The District Court dismissed the claims against these underwriters on statute-of-limitations grounds. The class representatives do not contest the dismissal of these additional underwriters on appeal. See Appellee's Br. at 7.

commenced an initial public offering of two million units at $7.00 per unit on December 22, 1993.[2] The Prospectus stated that NationsMart expected to raise $11.7 million in its public offering, and that it intended to use the net proceeds to fund the 51 existing NationsMart stores and to open 108 new stores by November 1994. Under the plan for growth set forth in the Prospectus, the company would open 600 new stores by 1998.

The Prospectus contained detailed financial data about NationsMart, a discussion and analysis of the company's financial situation and the results of its operation, and its strategy for future growth. It acknowledged that NationsMart had previously experienced financial losses, but stated that NationsMart's management believed that, based on a "financial model," projected income from existing stores, as well as the proceeds of the public offering, would "significantly improve the capital resources of the Company and thereby address certain of the going concern conditions." A section of the Prospectus labeled "Risk Factors" included some of the risks investors faced in buying offered units, such as NationsMart's limited operating history and the absence of a prior market for its shares; its dependence on leases from Wal-Mart, Kmart, and other "host retailers"; the competition it faced from other retailers; and its need for additional financing in the future. The Prospectus also cautioned that NationsMart's financial model reflected "only the best judgment of management" and was subject to conditions beyond the company's control.

On July 14, 1994, NationsMart announced that it was experiencing slower-than-expected growth and that it would open 35 to 45 fewer stores than anticipated in the Prospectus. NationsMart also disclosed that it had settled a "whistleblower" lawsuit with Alice Brueggemann, a former senior vice president and chief financial officer who had sued NationsMart after she was discharged in March 1994. Following these

---

[2]A "unit" consisted of one share of common stock and a warrant to purchase an additional share of common stock. Consolidated Amended Class Action Complaint ("Complaint") ¶ 1.

announcements, NationsMart's common stock fell to $1.875 and continued to decline until mid-1995, when the stock was delisted.

On November 4, 1994, Helen, Brian, and John Palmquist filed a class action against the defendants in the Northern District of Illinois; and on November 7, 1994, Jack Carlon filed a class action against the defendants in the Eastern District of Missouri.[3] The Palmquists' case was transferred to the Eastern District of Missouri in February 1995, and the four plaintiffs were permitted to file a consolidated class-action complaint on May 1, 1995.[4] It is this complaint that is the subject of this appeal.

In the consolidated complaint, the plaintiffs asserted three bases for relief. Count I alleged violations of Sections 11 and 15 of the Securities Act of 1933 by all of the defendants. Count II alleged violations of Section 12(2) of the Securities Act of 1933 by NationsMart and the two lead underwriters. And Count III alleged violations of Section 10(b) and 20 of the Securities Exchange Act of 1934 and SEC Rule 10b-5 by all defendants. Factually, the complaint alleged that the defendants made false statements in and omitted material information from the Prospectus. It alleged that, given the projections of NationsMart's underwriters, the defendants knew that the

---

[3]In the original complaint filed by Mr. Carlon, James Tellatin was named as a plaintiff and class representative. Mr. Carlon filed an amended complaint on November 14, 1994, which dropped Mr. Tellatin as a named party in this action.

[4]On November 22, 1995, the District Court entered an order certifying two classes of plaintiffs pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). The first class, represented by Jack Carlon and Helen Palmquist, included "all persons who purchased the securities of NationsMart . . . in the Offering . . . and who suffered damages as a result thereof." The second class, represented by Helen Palmquist, included "all persons who purchased NationsMart securities in the Offering . . . or in the open market during the period from December 22, 1993, through August 18, 1994, and who suffered damages as a result thereof." Both classes excluded the defendants and their family members or successors. See Appellants' Appendix at 216-221. The first class appears to be entirely included within the second.

company would not be able to implement the business plan outlined in the Prospectus with the proceeds of the offering. Complaint ¶¶ 22-25, 30. The plaintiffs also claimed that the defendants failed to disclose certain facts learned by NationsMart's management in the months before the effective date of the public offering, including the fact that favorable trends described in the Prospectus were not materializing and were not likely to materialize; that the costs to operate existing NationsMart stores and the cost to open new stores had been increasing; and that corporate overhead was increasing. Complaint ¶¶ 40-43. The complaint went on to allege that after the public offering the defendants continued to make statements touting NationsMart's plans to open new stores which they knew had no reasonable basis in fact, including allegedly misleading statements made to investors and statements made in annual and quarterly reports filed with the SEC. Complaint ¶¶ 45-51.

In a memorandum opinion and order on April 11, 1996, the District Court dismissed all claims against NationsMart and its directors and officers, and it dismissed most of the claims against RAS and Pauli & Company, the two lead underwriters. The Court allowed part of the § 12(2) claim in Count II of the complaint to survive with respect to the two lead underwriters. In a second opinion on November 6, 1996, the District Court dismissed the remainder of the § 12(2) claim against RAS and Pauli & Company. In these opinions, the District Court held that the plaintiffs had failed to state a claim under Federal Rule of Civil Procedure 12(b)(6) and had failed to allege fraud with particularity under Federal Rule of Civil Procedure 9(b). In the April 11 opinion and order, the District Court dismissed the case with prejudice and without leave to amend. Nevertheless, the plaintiffs later sought leave to amend the complaint and vacate the April 11 order. The District Court denied this motion in its November 6 order, stating that the plaintiffs' failure to amend the complaint before the Court entered its April 11 order constituted undue delay.

This case is now before us on appeal of Jack Carlon and Helen, Brian, and John Palmquist.

II.

For the reasons given below, we hold that the District Court erred when it dismissed the plaintiffs' claim against all defendants under § 11 of the Securities Act of 1933.

A.

The District Court based its dismissal of the complaint in part on the plaintiffs' failure to plead specific facts pursuant to Federal Rule of Civil Procedure 9(b) to support the allegations of liability under § 11 of the Securities Act. Under Federal Rule 9(b), in a complaint averring fraud, "the circumstances constituting fraud or mistake shall be stated with particularity." We hold that the particularity requirement of Rule 9(b) does not apply to claims under § 11 of the Securities Act, because proof of fraud or mistake is not a prerequisite to establishing liability under § 11.

Section 11 imposes civil liability on persons preparing and signing materially misleading registration statements. 15 U.S.C. § 77k(a) (1994). A registration statement is materially misleading if it contains an untrue statement of material fact or if it omits a material fact necessary to prevent the statement from being misleading. Id. Any person who purchases a registered security is entitled to sue under this section. Id. Section 11 imposes "a stringent standard of liability on the parties who play a direct role in a registered offering." Herman & MacLean v. Huddleston, 459 U.S. 375, 381-82 (1983) (footnotes omitted). To establish a prima facie § 11 claim, a plaintiff need show only that he bought the security and that there was a material misstatement or omission. Scienter is not required for establishing liability under this section. Id. at 382; In re Stac Electronics Securities Litigation, 89 F.3d 1399 (9th Cir. 1996), cert. denied, 117 S. Ct. 1105 (1997). The liability of the issuer of a materially misleading registration statement is "virtually absolute, even for innocent misstatements." Herman & MacLean, 459 U.S. at 382 (footnote omitted). Persons beside the issuer who face

liability under § 11 -- which includes anyone who signed the registration statement, such as officers, directors, and underwriters -- must prove that, after reasonable investigation, they had reasonable grounds to believe that the statement was not materially misleading. 15 U.S.C. § 77k(b)(3); Herman & MacLean, 459 U.S. at 382.

In their complaint, the plaintiffs made clear that they did not allege in the context of their § 11 claim that the defendants were liable for fraudulent or intentional conduct. Complaint ¶ 74. Therefore, their claim should not have been dismissed for failing to comply with Rule 9(b). And even if the plaintiffs were alleging fraudulent conduct under § 11, as the defendants argue in their brief, any such allegation would be mere surplusage. The only consequence of a holding that Rule 9(b) is violated with respect to a § 11 claim would be that any allegations of fraud would be stripped from the claim. The allegations of innocent or negligent misrepresentation, which are at the heart of a § 11 claim, would survive. The plaintiffs' case should not have been dismissed because they alleged more than was necessary to recover under § 11 of the Securities Act.

We recognize that other courts have sometimes applied Rule 9(b) to claims brought under §§ 11 and 12(2) of the Securities Act of 1933. Such claims are said to be subject to Rule 9(b) when they are "grounded in fraud." Melder v. Morris, 27 F.3d 1097, 1100 n.6 (5th Cir. 1994); In re Stac Electronics Securities Litigation, 89 F.3d at 1404-05 (footnote omitted). Accord, Shapiro v. UJB Financial Corp., 964 F.2d 272, 288 (3d Cir.), cert. denied, 506 U.S. 934 (1992); Sears v. Likens, 912 F.2d 889, 892-93 (7th Cir. 1990). Defendants ask that we follow these authorities and affirm the dismissal of the §§ 11 and 12 (2) counts of this complaint for failure to comply with Rule 9(b). We decline to do so for two reasons. First, the complaint in this case expressly disavows any claim of fraud in connection with the § 11 and § 12(2) counts, as we have already noted. See Shaw v. Digital Equipment Corp., 82 F.3d 1194, 1223 (1st Cir. 1996) (complaint avoids grounding in fraud; allegation that defendants actually possessed the information they failed to disclose is not an averment of fraud sufficient

to subject the complaint to Rule 9(b)). In addition, a pleading standard which requires a party to plead particular facts to support a cause of action that does not include fraud or mistake as an element comports neither with Supreme Court precedent nor with the liberal system of "notice pleading" embodied in the Federal Rules of Civil Procedure. Federal Rule 8(a)(2) requires a plaintiff to plead only "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." See Conley v. Gibson, 355 U.S. 41, 47 (1957) ("[T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts on which he bases his claim."). Rule 9(b) imposes a heightened pleading requirement for allegations of fraud and mistake; but, as we noted above, § 11 does not require proof of fraud for recovery. The Supreme Court has held that federal courts may not apply the heightened pleading standard of Rule 9(b) outside the two specific instances -- fraud and mistake -- explicitly found in the Rule. See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993) (holding that a federal court may not impose a standard more stringent than the pleading requirements of Rule 8(a) in civil rights cases alleging municipal liability under 42 U.S.C. § 1983).

The plaintiffs' allegations complied with the "short and plain statement" requirement of Federal Rule 8(a). The plaintiffs alleged that they bought NationsMart stock and that "[t]he Offering Materials contained untrue statements of material facts and omitted facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." Complaint ¶ 68. Specific instances of misstatements were also pleaded. Given the broad scope of liability under § 11 and the liberal pleading requirements of Federal Rule 8(a), these allegations are sufficient to state a claim. Therefore, the District Court should not have dismissed the complaint under Rule 12(b)(6).

B.

The District Court also based its dismissal of part of the plaintiffs' § 11 claim on the "safe harbor" provision of SEC Rule 175, which protects "forward-looking statements" made in documents filed with the SEC. Under this regulation, a "forward-looking statement" can include statements containing projections of revenue, income, earnings per share, capital expenditures, dividends, or capital structure; statements of management's future plans and objectives; and statements of future economic performance contained in the management's discussion and analysis of financial conditions. 17 C.F.R. § 230.175(c) (1997). A forward-looking statement is protected from liability under the Securities Act of 1933 and "shall be deemed not to be a fraudulent statement . . . unless it is shown that such a statement was made or reaffirmed without a reasonable basis or was disclosed other than in good faith." 17 C.F.R. § 230.175(a) (1997). "Fraudulent" for purposes of Rule 175 does not mean fraud in the traditional sense, but instead simply denotes any of the bases of liability under the Securities Act, including liability under § 11. See Wielgos v. Commonwealth Edison Co, 892 F.2d 509, 513 (7th Cir. 1989); 17 C.F.R. § 230.175(d) (1997). Therefore, material misstatements in a registration statement may be protected from § 11 liability if they are forward-looking.

Many of the statements in the Prospectus challenged by the plaintiffs were indeed forward-looking. The plaintiffs challenged NationsMart's projections that it would open 108 new stores by 1994 and 600 new stores by 1998; that the proceeds from the public offering would be sufficient to cover the plans for expansion; and that NationsMart's history of operating losses would give way to future growth. Complaint ¶ 22-26, 29. The plaintiffs did not argue in their complaint or before the District Court that these statements were not forward-looking; rather, they alleged that the defendants' statements "were false and had no reasonable basis because [the defendants] knew that there were no valid assumptions underlying the projections." Complaint ¶ 31. Forward-looking statements are not protected by Rule 175 if they are not generally

believed, if they lack a reasonable basis, or if the speaker knows of undisclosed facts which seriously undermine the accuracy of the statement. In re Apple Computer Securities Litigation, 886 F.2d 1109, 1113 (9th Cir. 1989), cert. denied, 496 U.S. 943 (1990). However, the District Court held that the plaintiffs could not avoid the "safe harbor" of SEC Rule 175 by claiming that the defendants had no reasonable basis for their projections because, under Rule 9(b), the plaintiffs did not plead specific facts which showed that the statements either had no reasonable basis or were not believed by the defendants.

We have already held that the specificity requirement of Rule 9(b) does not apply to claims brought under § 11 of the Securities Act. The District Court and the defendants have cited several cases which require plaintiffs to plead specific facts in order to avoid the safe-harbor rule. See In re Healthcare Compare Corp. Securities Litigation, 75 F.3d 276 (7th Cir. 1996); Arazie v. Mullane, 2 F.3d 1456 (7th Cir. 1993); Roots Partnership v. Lands' End, Inc., 965 F.2d 1411 (7th Cir. 1992). However, the claims in these cases were brought only under § 10(b) of the Securities Exchange Act of 1934, which requires proof of fraud as one of its elements. Application of the specificity requirement of Rule 9(b) would be appropriate if the "safe harbor" protected the defendant from a cause of action involving true fraud. But § 11 claims do not involve fraud, and the plaintiffs did not have to plead specific facts to avoid the safe-harbor rule.

In the complaint, the plaintiffs attacked statements of historical fact as well as the defendants' forward-looking statements. The District Court dismissed the plaintiffs' allegations under § 11 of false statements of historical fact on the basis that these allegations did not comport with Federal Rule 9(b). These challenged statements from the Prospectus include the statement that NationsMart dealt with its affiliates at arm's length; the statement that NationsMart was complying with federal wage and hour laws; the dollar figure representing the cost of opening a new store; and statements describing revenue, profit, and expense trends. Complaint ¶¶ 2, 33, 41. The

plaintiffs also alleged that the defendants omitted material information from the prospectus in failing to disclose adverse trends the company was experiencing in the months immediately preceding the public offering. Complaint ¶ 42. As we noted above, Rule 9(b) does not apply to claims brought under § 11. The allegations of false statements of historical fact and of material omissions were sufficient to state a claim.

The defendants argue that the plaintiffs have waived on appeal any argument that statements of historical fact in the Prospectus do not comply with Rule 9(b) because "the plaintiffs' brief does not discuss or dispute this aspect of the district court's ruling." Appellees' Br. at 30. We do not agree. The plaintiffs forcefully argued in their brief that Rule 9(b) should not apply to claims brought under § 11 and argued that the defendants omitted material facts from the Prospectus. Appellants' Br. at 17-20, 25-27. Accordingly, we hold that they did not waive this argument on appeal.

C.

The District Court also dismissed the plaintiffs' § 11 claim because, according to the Court, the Prospectus contained numerous statements which "bespoke caution" and warned investors of the financial risks they were taking when they bought stock in NationsMart. This Court has recognized that specific cautionary statements in offering materials which disclose potential investment risks may defeat a plaintiff's claim that the offering materials were materially misleading under federal securities law. See Moorhead v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 949 F.2d 243, 245-46 (8th Cir. 1991); Polin v. Conductron Corp., 552 F.2d 797, 806-07 (8th Cir.), cert. denied, 434 U.S. 857 (1977). Cautionary statements, however, cannot be general risk warnings or mere boilerplate; they must be detailed and specific. See Moorhead, 949 F.2d at 245-46.

The Prospectus contained a section labeled "Risk Factors" which warned of potential problems NationsMart faced as a growing company. The Risk Factors section

emphasized NationsMart's limited operating history, its dependence on third parties such as Wal-Mart and Kmart, its inability to continue operations without the proceeds of the offering, and its need for financing other than the proceeds of the offering to operate beyond October 1994. Appendix at 584-588. NationsMart's operating losses up to September 26, 1993, were also reported in the Risk Factors section. Id. at 584. In another part of the Prospectus, in which the defendants described NationsMart's business plan for future growth, they stated that "the financial model used by the Company reflects only the best judgment of management and actual results are substantially dependent on numerous factors . . .." Id. at 597.

Many of the warnings of short-term risks to investors, however, were generic and nonspecific. The complaint alleges that the defendants did not adequately warn investors of the potential risks faced by NationsMart between the time of the offering and October 1994, when the Prospectus admitted that the company would have to find new sources of revenue. Many statements in the Risk Factors section -- such as the warning that "[t]here can be no assurance that any of the Company's Centers or that the Company as a whole will generate income from operations or provide cash from operating activities in the future" -- do not provide the sort of detail that would "bespeak caution" to a potential investor. Though the Prospectus did state that "the Company expects to continue to incur net losses and negative cash flow from operations during 1994 and 1995," Appendix at 584, this warning must be read in conjunction with statements elsewhere in the Prospectus that

> [b]ased upon its financial model, management believes that previously experienced operating losses will diminish as currently operating Centers, most of which have been open fewer than six months, begin to generate income from operating activities. Additionally, the net proceeds of this offering will significantly improve the capital resources of the Company and thereby address certain of the going concern conditions.

Appendix at 597. There is no warning anywhere in the Prospectus detailing the specific risk that NationsMart would continue to face severely declining profits and ballooning corporate overhead in the short term, between the date of the offering, December 1993, and October 1994, which threatened the company's ability to operate.

In addition, the bespeaks-caution doctrine cannot immunize the defendants from liability under § 11 if they omitted material information from the offering materials. See Griffin v. McNiff, 744 F. Supp. 1237, 1254 (S.D.N.Y. 1990), aff'd without opinion, 996 F.2d 303 (2d Cir. 1993); Robbins v. Moore Medical Corp., 788 F. Supp. 179, 185 (S.D.N.Y. 1992). In their complaint, the plaintiffs alleged that NationsMart's management failed to disclose specific facts indicating that its judgment was flawed. Complaint ¶¶ 41-42. If taken as true, these allegations would call into question whether management was in fact exercising its "best judgment" in formulating the company's financial model, as it claimed in the Prospectus. See Appendix at 597. Because of inadequate and nonspecific warnings of short-term risks, and because of the plaintiffs' allegations that the defendants omitted material information from the Prospectus, the bespeaks-caution doctrine cannot, simply as a matter of pleading, defeat the plaintiffs' § 11 claim.

III.

We also hold that the complaint stated a claim against NationsMart, RAS, and Pauli & Company under § 12(2) of the Securities Act of 1933.

A.

Section 12(2) of the Securities Act of 1933 creates a private remedy for the buyer of a security against the seller for material misrepresentations in connection with the offer and the sale. See 15 U.S.C. § 77*l* (1994). A "seller" of the security is defined as anyone who offers or sells a security "by the use of any means or instruments of

transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication . . . ." 15 U.S.C. § 77*l*(2). Once a buyer can establish privity with a seller, the buyer need prove only that there was a material misstatement or omission in the prospectus or oral communication. The seller's only defense is that he did not know of the false material misstatement and, in the exercise of due diligence, could not have discovered the misstatement. 15 U.S.C. § 77*l*(2). The plaintiff need not prove reliance on the prospectus or oral statement. Austin v. Loftsgaarden, 675 F.2d 168, 176 n.16 (8th Cir. 1992). Fraud and scienter are not elements of a § 12(2) claim. Wigand v. Flo-Tek, Inc., 609 F.2d 1028, 1034 (2d Cir. 1980).

The District Court dismissed the plaintiffs' § 12(2) claim in part because it held that many of the statements in the Prospectus challenged by the plaintiffs were forward-looking and fell into the "safe harbor" of SEC Rule 175, which applies to § 12(2) as well as § 11 of the 1933 Act. See 17 C.F.R. § 230.175 (1997). We hold that the safe-harbor rule does not apply to the plaintiffs' § 12(2) claim, as pleaded, for the same reason that it does not apply to the § 11 claim: The plaintiffs adequately pleaded that the defendants had no reasonable basis for the forward-looking statements found in the offering materials. The District Court also dismissed the plaintiffs' § 12(2) claim because it thought that the statements of historical fact, to which the safe-harbor rule does not apply, and allegations of false statements made by the defendants after the date of the offering were not pleaded with sufficient particularity under Federal Rule of Civil Procedure 9(b). But Rule 9(b) does not apply to claims brought under § 12(2) because, as in the case of § 11, proof of fraud and scienter are not necessary for recovery. Any allegations of fraud or scienter by the plaintiffs to sustain the § 12(2) claim were surplusage, and the complaint should not have been dismissed for pleading more than the Federal Rules required.

The District Court also dismissed the plaintiffs' § 12(2) claim on the theory that the Risk Factors stated in the Prospectus "bespoke caution" and warned investors of

-14-

any potential risks. We hold that the "bespeaks caution" doctrine does not apply to the § 12(2) claim for the same reason that it does not apply to the § 11 claim: The complaint alleges that the Prospectus did not adequately warn investors of short-term risks, and the bespeaks caution doctrine does not apply to the alleged material omissions from the Prospectus.

B.

The District Court's application of Rule 9(b), SEC Rule 175, and the "bespeaks caution" doctrine did not entirely dispose of the § 12(2) claim. Section 12(2), unlike § 11, imposes liability for misstatements and omissions made after the public offering, as well as those made in the offering materials. Because § 12(2) extends liability beyond the date of the offering, some courts have found a duty to update a prospectus after the offering date if any statements in it become false or misleading over time. See Ackerman v. Schwartz, 947 F.2d 841, 848 (7th Cir. 1991) (recognizing a duty to update a prospectus in the context of a claim brought under § 10(b) of the Securities Exchange Act of 1934). The District Court did not have to reach the question of whether NationsMart could be liable under § 12(2) for breach of a duty to update the Prospectus because it dismissed the plaintiffs' § 12(2) claim on the alternative ground that the plaintiffs did not adequately allege that NationsMart was a "seller" of securities under the meaning of § 12(2).[5] A "seller," under § 12(2), is "anyone who successfully

---

[5]The District Court, in its April 11, 1996 order, allowed part of the § 12(2) claim to survive with respect to RAS and Pauli & Company, the two lead underwriters, because they did not dispute that they were "sellers" under § 12(2). The Court allowed the § 12(2) claim to survive against RAS and Pauli & Company to the extent that they may have had a duty to update or correct the Prospectus if it became misleading after the date of the offering, pending briefing by the parties on the issue. In an order filed on November 6, 1996, the District Court dismissed the remaining § 12(2) claim against RAS and Pauli & Company, holding that they had no duty to update any statements which may have become misleading after the date of the offering. Because the plaintiffs do not contest on appeal the District Court's ruling that the two underwriters

solicits the purchase of securities, motivated at least in part by a desire to serve his own financial interests or those of the securities owner." In re Crafmatic Securities Litigation v. Kraftsow, 890 F.2d 628, 635 (3d Cir. 1990) (citing Pinter v. Dahl, 486 U.S. 622, 647 (1988)). The District Court recognized that in the consolidated complaint, the plaintiffs alleged that "NationsMart and the Underwriter Defendants offered, sold, and solicited sales of shares, by means of the Prospectus . . . . NationsMart and the Underwriter Defendants were sellers of the shares of NationsMart stock within the meaning of Section 12(2) of the Securities Act." Complaint ¶ 76. The District Court held that the plaintiffs should have alleged specific facts demonstrating that NationsMart actively solicited the sale of shares to the plaintiffs. Once again, the District Court applied the heightened pleading standard of Federal Rule of Civil Procedure 9(b) to a § 12(2) claim, which does not require proof of fraud or mistake for recovery. We disagree, and hold that the plaintiffs adequately alleged in the complaint that NationsMart was a seller under § 12(2).

The defendants argue that the plaintiffs waived the argument on appeal that NationsMart was a seller under § 12(2) because the plaintiffs did not specifically refer to it in their appellate brief. However, the plaintiffs did argue at length that the particularity requirement of Federal Rule 9(b) should not apply to § 12(2) claims. Appellants' Br. at 17-20. We therefore hold that the plaintiffs did not waive the argument that Rule 9(b) did not require the plaintiffs to plead with specificity that NationsMart was a seller under § 12(2).

_____

had no duty to update, we do not need to reach that question now.

IV.

For the reasons given below, we uphold the District Court's dismissal of the plaintiffs' claim under §§ 10(b) and 20 of the Securities Exchange Act of 1934 and SEC Rule 10b-5.

A.

Rule 10b-5, promulgated by the SEC pursuant to § 10(b) of the Securities Exchange Act of 1934, prohibits fraudulent conduct in the sale and purchase of securities. 15 U.S.C. § 78j (1994); 17 C.F.R. § 240.10b-5 (1997); Harris v. Union Electric Co., 787 F.2d 355, 362 (8th Cir.), cert. denied, 479 U.S. 823 (1986). Section 20 of the Securities Exchange Act extends liability under § 10(b) and Rule 10b-5 to any "controlling person." 15 U.S.C. § 78t(a) (1994). To recover in a private action brought under Rule 10b-5, a plaintiff must establish:

> 1) that the defendant acted in a manner prohibited by the Rule, whether it be that the defendant employed a device, scheme, or artifice to defraud, made misrepresentations or omissions of material fact, or engaged in acts, practices or courses of business that operate as a fraud or deceit; 2) causation, often analyzed in terms of materiality and reliance; 3) damages; and 4) that the fraudulent activity occurred in connection with the purchase and sale of a security.

Harris v. Union Electric Co., 787 F.2d at 362. Proof of scienter, or the "intent to deceive, manipulate, or defraud," is necessary to prevail in a 10b-5 action. Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 (1976). Because a Rule 10b-5 claim is necessarily grounded in fraud, the more stringent pleading requirements of Federal Rule of Civil Procedure 9(b) apply to complaints alleging a 10b-5 violation. Arazie v. Mullane, 2 F.3d 1456, 1465 (7th Cir. 1993).

The Code of Federal Regulations applies a "safe harbor" rule to Rule 10b-5 which protects forward-looking statements from liability. 17 C.F.R. § 240.3b-6 (1997). This regulation is identical to the regulations which protect forward-looking statements under the Securities Act of 1933. See 17 C.F.R. § 230.175 (1997). As noted above, the plaintiff does not deny that many of the challenged statements from the Prospectus -- such as NationsMart's plan to open 108 new stores in 1994 and 600 new stores by 1998, the intended uses of proceeds from the offering, and predictions about future sales and diminishing operating losses -- were forward-looking. Rather, the plaintiffs allege in the complaint that management had no reasonable basis to make such statements. If pleaded properly, these allegations would allow the plaintiffs to avoid the safe-harbor rule.

We agree with the District Court that the plaintiffs' allegations that the forward-looking statements were made without a reasonable basis do not conform to the particularity requirements of Federal Rule 9(b). In the complaint, the plaintiffs allege that management's business plan was "false and misleading and not reasonably based"; that sales forecasts "were not justifiable or reasonable based on historical data"; and that "there were no valid assumptions underlying the [future business] projections." Complaint ¶¶ 30, 31. While these statements are "short and plain" enough for Federal Rule 8(a), and therefore are sufficient to avoid the safe-harbor rule for the §§ 11 and 12(2) claims, they do not include enough particular facts to show management's allegedly fraudulent statements lacked a reasonable basis. To satisfy Rule 9(b), the plaintiffs should have alleged, for example, who prepared the relevant figures and projections, when they were prepared, and who reviewed and evaluated the figures. See Arazie v. Mullane, 2 F.3d at 1465-67. Because the complaint does not provide that level of specificity, the District Court properly dismissed the 10b-5 claim as to the challenged forward-looking statements in the Prospectus.

We also agree with the District Court that the plaintiffs' attempts to state a 10b-5 claim with respect to false statements of historical fact in the Prospectus, which are not

covered by the safe-harbor rule, fall short of Federal Rule 9(b)'s specificity requirements. In the complaint, the plaintiffs allege some misstatements of fact, such as that NationsMart's management misrepresented negative business trends, misrepresented the costs of opening new stores, and omitted material information about the operation of NationsMart stores. Complaint ¶¶ 31, 33, 37, 41, 42. The plaintiffs did not quantify these business trends or say which business trends were described inaccurately in the prospectus. They did not demonstrate how the actual cost of opening a new store differed from the cost found in the prospectus. And the plaintiffs did not plead specific facts showing how omissions from the prospectus were material. See In re GlenFed, Inc. Securities Litigation, 42 F.3d 1541, 1548 (9th Cir. 1994) (holding that a "plaintiff must set forth what is false or misleading about [a] statement, and why it is false"); Shushany v. Allwaste, Inc., 992 F.2d 517, 522 n.9 (5th Cir. 1993) (holding that a plaintiff must state facts showing that a false representation is material). Therefore, the statements of historical fact also did not comply with Federal Rule 9(b) and were properly dismissed.

Because some courts have found a duty to update and correct projections in offering materials to the extent they become materially misleading over time, the District Court recognized that the safe-harbor rule would not foreclose liability under Rule 10b-5 if the defendants in this case had such a duty. And the Court noted that the plaintiffs alleged that NationsMart's directors and officers made false and misleading statements after the date of the offering, which also would not have been covered by the safe harbor rule. The Court disposed of both of these issues by holding that the plaintiffs failed adequately to plead reliance, which is a necessary element of recovery under Rule 10b-5. Basic, Inc. v. Levinson, 485 U.S. 224, 243 (1988).

Reliance typically requires plaintiffs to prove that alleged misrepresentations induced them to do something different from what they would otherwise have done in making investment decisions. Austin v. Loftsgaarden, 675 F.2d 168, 177 (8th Cir. 1982). In some situations, courts may presume reliance. In a case involving a failure

to disclose information to investors, courts will presume reliance if the omitted information is shown to be material.  Affiliated Ute Citizens v. United States, 406 U.S. 128, 153-54 (1972); Austin v. Loftsgaarden, 675 F.2d at 177.  The presumption of reliance in failure-to-disclose cases has been limited to situations where the parties deal directly with one another in face-to-face transactions.  See Laventhall v. General Dynamics Corp., 704 F.2d 407, 413 n.4 (8th Cir.), cert. denied, 464 U.S. 846 (1983).  Reliance may also be presumed under a fraud-on-the-market theory, "where materially misleading statements have been disseminated into an impersonal, well-developed market for securities . . .."  Basic Inc. v. Levinson, 485 U.S. at 247.  Some courts recognize a "fraud-created-the-market" theory, where reliance may be presumed if the defendants' fraudulent activity is "so pervasive that it goes to the very existence of the [securities] and the validity of their presence on the market."  Ross v. Bank South, N.A., 885 F.2d 723, 729 (11th Cir. 1989), cert. denied, 495 U.S. 905 (1990).  Not all courts have accepted the fraud-created-the-market theory.  See Eckstein v. Balcor Film Investors, 8 F.3d 1121, 1130 (7th Cir. 1993), cert. denied, 510 U.S. 1073 (1994).

We agree with the District Court that the plaintiffs failed to plead reliance in accordance with the specificity requirements of Federal Rule 9(b).  The complaint explicitly mentioned reliance only once:

> Plaintiffs and other members of the Class, at the time of the alleged misrepresentations and omissions, were ignorant of the falsity of the statements, and believed them to be true.  In reliance upon the defendants' misrepresentations, the integrity of the market and the securities offering process, and upon the fidelity, integrity and superior knowledge of the defendants, and in ignorance of truth, plaintiffs and the other Class members were induced to and did obtain NationsMart securities.  Had plaintiffs and the other members of the Class known the truth, they would not have taken such action.

Complaint ¶ 88. The plaintiffs did not adequately plead actual reliance, because they did not allege specific facts showing that they relied on the prospectus or any post-offering statements by the defendants. They did not claim that they ever read the prospectus or specify which allegedly fraudulent statements they relied on in purchasing NationsMart stock.

The plaintiffs also failed properly to invoke any of the presumptions of reliance. The complaint alleged no direct contact between the plaintiffs and the defendants, so the plaintiffs are not entitled to the presumption of reliance for the non-disclosure of material information. As for the fraud-on-the-market theory, though the complaint mentioned that NationsMart stock was traded on the NASDAQ market, it did not allege specific facts showing that a large number of people could buy or sell the stock; that trading information on the stock was widely available; and that the market rapidly reflected new information in price. See Freeman v. Laventhold & Horwath, 915 F.2d 193, 199 (6th Cir. 1990). Finally, even if this Court were to accept the "fraud-created-the-market" theory, the plaintiffs do not allege facts indicating that if the defendants had not made fraudulent statements, there would not have been any market for NationsMart securities. Therefore, because the plaintiffs do not plead reliance specifically as required by Rule 9(b), the District Court properly dismissed the allegations under Rule 10b-5 that the defendants had a post-offering duty to update material misstatements and the claim that the defendants made fraudulent statements after the date of the offering.

B.

Because the plaintiffs failed to state a claim under § 10(b) of the Securities Exchange Act in their complaint, it is necessary to determine whether the district judge abused her discretion in denying the plaintiffs' request for leave to amend to correct defects in the complaint. We hold that the judge did not abuse her discretion in denying leave to amend.

-21-

A review of the procedural history of the case is necessary to explain our holding. On July 17 and July 20, 1995, the defendants filed various motions to dismiss the plaintiffs' consolidated complaint. As the District Court explained in its November 6, 1996, order, the basis of many of these motions was the failure to plead fraud with particularity under Rule 9(b). Therefore, as early as July 1995, the plaintiffs were on notice that the sufficiency of their pleadings was being attacked by the defendants. On July 31, 1995, the District Court issued a pretrial order which set September 30, 1995, as the last day for amendments to pleadings. Over the next few months, the plaintiffs made no attempt to remedy the defects in the complaint claimed by the defendants, and made no request of the District Court that they be allowed to amend if the Court granted the defendants' motions to dismiss. On April 11, 1996, the district judge granted the defendants' motions to dismiss in large part. Two weeks later, the plaintiffs filed a motion to vacate the April 11 order and a motion seeking leave to amend the complaint. The district judge denied this motion on November 6, 1996.

The applicable standard of review is whether the District Court abused its discretion in denying leave to amend. Buder v. Merrill Lynch, Pierce, Fenner & Smith, 644 F.2d 690, 694 (8th Cir. 1981). Typically, in keeping with the policy of Federal Rule of Civil Procedure 15(a), leave to amend pleadings should be liberally granted. Foman v. Davis, 371 U.S. 178, 182 (1962); Buder, 644 F.2d at 694. However, different considerations apply when a party seeks to amend the pleadings *after* the district court dismisses the complaint. United Food and Commercial Workers International Union v. Brown Group, Inc., 50 F.3d 1426, 1432 (8th Cir. 1995), rev'd on other grounds, 116 S. Ct. 1529 (1996). While the district court, in its discretion, may still grant leave to amend after it dismisses a complaint, unexcused delay by the plaintiff in seeking to amend is sufficient to justify the court's denial. Humphreys v. Roche Biomedical Laboratories, Inc., 990 F.2d 1078, 1082 (8th Cir. 1993).

Given that the plaintiffs had nearly ten months between the time they were put on notice and the time the District Court dismissed most of the counts in the complaint, we cannot say that the District Court abused its discretion in denying leave to amend after its April 11 order. The plaintiffs cite as their primary reason for delay their inability to obtain discovery from the defendants; yet, in their brief, they admit that they were receiving new information throughout late 1995 and early 1996 which they eventually used in the amended complaint filed on April 25. Appellants' Br. at 36. At the very least, before the April 11 dismissal, the plaintiffs could have requested leave to amend in the event the District Court found the defendants' 9(b) arguments persuasive. Because the plaintiffs waited until two weeks after the dismissal of most of their case to attempt to remedy problems of which they were aware months before, we uphold the denial of leave to amend and the District Court's dismissal of the plaintiffs' Rule 10b-5 claim. The Court could well have granted leave to amend, but we cannot say it was obliged to do so.

V.

For the reasons discussed above, we affirm the judgment of the District Court in part, reverse in part, and remand for further proceedings not inconsistent with this opinion.

BEAM, Circuit Judge, concurring and dissenting.

I concur in Parts I, II A and B and IV A and B of the court's opinion. As to Parts II C and III A and B, I dissent. It is difficult for me to envision how or in what manner, defendants could have advanced greater warnings to potential investors so as to avail themselves of the "bespeaks caution" doctrine. Accordingly, I would affirm the district court under that holding.

A true copy.

Attest:

  CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.