# United States Court of Appeals

### For the Eighth Circuit

_____

No. 12-3886

_____

Thomas M. Horras

*Plaintiff - Appellant*

v.

American Capital Strategies, Ltd.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: June 10, 2013
Filed: September 3, 2013

_____

Before COLLOTON, GRUENDER, and BENTON, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Thomas Horras filed this lawsuit against American Capital Strategies, Ltd. ("ACS"), making claims for breach of fiduciary duty and breach of contract. The district court[1] granted ACS's motion to dismiss, *see* Fed. R. Civ. P. 12(b)(6), and

---

[1]The Honorable James E. Gritzner, Chief Judge, United States District Court for the Southern District of Iowa.

denied Horras's subsequent motion for relief from judgment, *see* Fed. R. Civ. P. 60(b), and motion to alter or amend the judgment, *see* Fed. R. Civ. P. 59(e), in which he sought leave to amend the complaint as an alternative remedy. Horras appeals the dismissal and the denial of his request for post-judgment leave to amend. We affirm.

I.

Horras's complaint sets forth the following facts. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002) ("Because we review here a decision granting respondent's motion to dismiss, we must accept as true all of the factual allegations contained in the complaint."). Sometime prior to 2000, Horras, an Iowa citizen, built a successful home health care business and agreed to merge his business with other home health care providers to form Auxi, Inc. ("Auxi"), a Delaware corporation. As a result of the merger, Horras received 417,734 shares of Auxi stock. At some time during 2000 or 2001, ACS acquired control of Auxi. In 2007, ACS initiated the sale of Auxi to Harden Health Care ("HHC"). Auxi did not inform Horras of the sale, and Horras received no compensation for his shares.

In Count I, for breach of fiduciary duty, Horras pleads that: (1) "ACS controlled Auxi Inc. at the time of its sale in 2007"; (2) "ACS, through its Auxi Board Members, initiated the sale of Auxi to HHC"; (3) "ACS was paid for its shares of Auxi in 2007"; (4) "ACS breached its fiduciary responsibility to plaintiff by failing to notify him of corporate activity [a]ffecting his shares"; (5) "Neither ACS nor Auxi has paid plaintiff for his shares"; (6) "Auxi shares sold for over $20.00 per share"; and (7) "Plaintiff was damaged by the failure to pay him for his shares."

In Count II, for breach of contract, Horras pleads that: (1) "ACS controlled Auxi Inc. through its Board Members"; (2) "ACS and/or Auxi represented all shares of Auxi would be sold to HHC"; (3) "Neither ACS nor Auxi, Inc. had authority to sell the plaintiff's shares"; (4) "Plaintiff has not been compensated for his shares"; (5)

"Plaintiff has been damaged by defendant's failure to compensate him for his shares"; and (6) "Auxi shares were sold for over $20.00 per share."

ACS filed a motion to dismiss, arguing that Horras (1) failed to allege facts plausibly suggesting that ACS owed him or breached any fiduciary duties and (2) failed to allege facts demonstrating the existence of a contract between ACS and himself. Before a hearing on ACS's motion to dismiss, the district court distributed a memorandum to both parties identifying its concerns about the complaint. The memorandum asked Horras to identify at the hearing the source of ACS's alleged duty to Horras, whether Horras alleged anything other than ACS's failure to notify him of the sale, and whether a contract existed between ACS and Horras. Responding to these concerns, which the court reiterated at the hearing, Horras's counsel stated, "[T]here are more than an adequate amount of facts that have been alleged in this claim. I would request the court to . . . allow this case to move on with some speed. . . . [I]t has been delayed for three months on a matter that confounds me with the simplicity given that the defendant purports to be a sophisticated financially based firm." On June 25, 2012, the court granted ACS's motion to dismiss, determining that Horras (1) failed to plead facts showing that ACS breached any fiduciary duty and (2) failed to plead facts establishing the existence of a contract.

Horras then filed motions for post-judgment relief under Rules 59(e) and 60(b), which the court denied. With those motions, Horras sought leave to amend as alternative relief and submitted a proposed First Amended Complaint. Noting that Horras never sought leave to amend prior to judgment, the district court held that it was not required to grant leave to amend post-judgment, alternatively denying Horras's motion for leave to amend on the basis of futility.

Horras appeals the grant of ACS's motion to dismiss and the denial of his request for leave to amend the complaint.

-3-

II.

We review the dismissal of a complaint for failure to state a claim *de novo*, *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009), affirming dismissal if the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A pleading that states a claim for relief must contain: a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

A.

To state a claim for breach of a fiduciary duty under Iowa law, the plaintiff must plead facts showing that "(1) [the defendant] owed a fiduciary duty to [the plaintiff]; (2) [the defendant] breached the fiduciary duty . . .; (3) the breach of fiduciary duty was a proximate cause of damage to [the plaintiff]; and (4) the amount of damages, if any." *Top of Iowa Co-op. v. Schewe*, 149 F. Supp. 2d 709, 717 (N.D. Iowa 2001) *aff'd*, 324 F.3d 627 (8th Cir. 2003).[2] A fiduciary duty exists between two entities "when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation[ship]." *Kurth v. Van Horn*,

---

[2]The parties agree that Iowa law applies to Horras's claims.

-4-

380 N.W.2d 693, 695 (Iowa 1986) (quoting Restatement (Second) of Torts, § 874 cmt. a (1979)).

Iowa law suggests that ACS, Auxi's controlling shareholder according to Horras's complaint, had a fiduciary relationship with Horras. The Iowa Supreme Court has held that "majority shareholders do owe a fiduciary duty to minority shareholders." *Linge v. Ralston Purina Co.*, 293 N.W.2d 191, 194 (Iowa 1980); *see also Cookies Food Prods., Inc. v. Lakes Warehouse Distrib., Inc.*, 430 N.W.2d 447, 451 (Iowa 1988) (noting that Iowa law imposes the same fiduciary responsibilities on majority shareholders that it does on corporate directors). *Linge*, however, did not address how a majority shareholder might breach its duties. Rather, it noted that the majority shareholder's status as a fiduciary to minority shareholders eased the minority-shareholder-plaintiff's burden of proof in a fraud action. *Id.* at 195. The court explicitly declined to address whether breach of fiduciary duty constituted a tort independent of fraud. *Id.* at 196-97. In *Cookies*, the court again announced that majority shareholders owe fiduciary duties to the minority, but it analyzed the case in terms of the traditional directorial duties of care and loyalty because the defendant majority shareholder in that case also was a director and officer of the corporation. *Cookies*, 430 N.W.2d at 451-53.

In *Baur v. Baur Farms, Inc*, --- N.W.2d ---, 2013 WL 2710449 (Iowa June 14, 2013), the state court clarified a majority shareholder's fiduciary duty to a minority shareholder: "This fiduciary duty encompasses a duty of care and a duty of loyalty to the corporation. The fiduciary duty also mandates that controlling directors and majority shareholders conduct themselves in a manner that is not oppressive to minority shareholders." *See Baur*, 2013 WL 2710449, at \*10 (internal citation omitted). The oppression determination "must focus on whether the reasonable expectations of the minority shareholder have been frustrated under the circumstances." *Id.* The court concluded that "majority shareholders act oppressively when . . . they fail to satisfy the reasonable expectations of a minority shareholder by

paying no return on shareholder equity while declining the minority shareholder's repeated offers to sell shares for fair value." *Id.* The court did not, however, determine "all the categories of conduct and circumstances that will constitute oppression." *Id.*

Unlike the minority shareholder in *Baur*, Horras requested neither dissolution of the company nor that ACS purchase his shares at fair market value. *See id.* at *1. Thus, we must determine whether Horras's complaint pleads facts sufficient to establish that ACS breached duties owed to Horras in its capacity as majority shareholder. Horras alleges that ACS sold its stock to HHC and that ACS failed to notify him of "corporate activity [a]ffecting his shares." Because the Iowa Supreme Court has not defined that this constitutes a breach of a majority shareholder's fiduciary duties, "we must determine what rule the Iowa Supreme Court would apply." *Doe v. Baxter Healthcare Corp.*, 380 F.3d 399, 407 (8th Cir. 2004). "Statements made by the Iowa Supreme Court are instructive." *Id.* "So, too, are rulings by inferior state appellate courts." *Id.*

The parties have not pointed us to, and we have been unable to locate, any Iowa authority holding that a majority shareholder must disclose to minority shareholders its intent to sell a controlling stake in a corporation. However, in determining that majority shareholders owe fiduciary duties to minority shareholders, the Iowa Supreme Court relied on the *Cyclopedia of the Law of Corporations*, *see Cookies*, 430 N.W.2d at 451, 454, and we are persuaded that it would consult that treatise again if asked to determine what constitutes a breach of a majority shareholder's duties. The treatise instructs that majority shareholders are "entitled to sell or not sell their stock as they see fit" and only breach a fiduciary duty to minority shareholders "if the purchasers will loot or mismanage the corporation, or if the sale involves fraud, misuse of confidential information, wrongful appropriation of corporate assets, or personal use of a business advantage that rightly belongs to the corporation." 12B William Meade Fletcher, *Cyclopedia of the Law of Corporations* § 5805 (2012). *See*

*also Cookies*, 430 N.W.2d at 454 ("[T]he law has long recognized the right of majority shareholders to control the affairs of a corporation, if done so lawfully and equitably, and not to the detriment of minority stockholders." (citing Fletcher, *supra*, § 5783)).[3]

As Horras alleges only that ACS controlled Auxi, initiated its sale to HHC, and failed to notify Horras of corporate activity affecting his shares, we agree with the district court that Horras pleads insufficient facts to support a claim that ACS breached its fiduciary duties as majority shareholder.

B.

To state a claim for breach of contract, an Iowa plaintiff must plead facts showing

---

[3]For the first time on appeal, Horras argues that he and ACS had a fiduciary relationship similar to that shared by partners in a partnership due to the fact that Auxi was a closely held corporation. *See Jochimsen v. Wapsi Hunting Club, Inc.*, 803 N.W.2d 672, *5 (Iowa Ct. App. 2011) (unpublished table opinion) ("Some authorities equate the fiduciary duties of those in a close corporation with the fiduciary duties that partners in a partnership owe to one another."). "Ordinarily, we do not consider an argument raised for the first time on appeal." *Orr v. Wal-Mart Stores, Inc.*, 297 F.3d 720, 725 (8th Cir. 2002). In any event, Horras's complaint does not allege that Auxi was closely held nor does it contain sufficient facts for us to infer that Auxi was closely held. Moreover, even if we did view Horras and ACS as having a fiduciary relationship similar to one shared between partners, Horras's complaint fails to sufficiently allege how ACS breached such a duty. *See Iqbal*, 556 U.S. at 678 (requiring the plaintiff to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). We cannot infer, as Horras now argues, that his shares were actually sold from his singular allegation that ACS failed to notify him of "corporate activity [a]ffecting his shares."

(1) the existence of a contract; (2) the terms and conditions of the contract; (3) that it has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach.

*Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998)).

Although Horras's complaint alleges damages, it contains no facts identifying the existence of a contract between ACS and Horras or its terms. The complaint also fails to demonstrate that Horras performed the terms and conditions required of him by the purported contract. He argues that he is a third-party beneficiary to a contract between ACS and HHC and that he suffered damages when ACS sold his shares to HHC without his permission. However, the complaint does not state that ACS actually sold his shares, it merely states that "ACS and/or Auxi *represented* all shares of Auxi would be sold to HHC" (emphasis added). Moreover, Horras pleads no facts suggesting that the alleged contract between ACS and HHC manifested an intent to benefit him. *See Midwest Dredging Co. v. McAninch Corp.*, 424 N.W.2d 216, 224 (Iowa 1988) (noting that the "primary question [in a third-party beneficiary action] is whether the contract manifests an intent to benefit a third party"). Accordingly, we affirm the dismissal of Count II for breach of contract.

III.

Horras next argues that the district court should have granted his post-judgment request for leave to amend the complaint. "We review the district court's denial of [Horras's] motion for leave to amend for an abuse of discretion." *Morrison Enters., LLC v. Dravo Corp.*, 638 F.3d 594, 602 (8th Cir. 2011), *cert. denied*, 565 U.S. ---, 132 S. Ct. 244 (2011).

Although a district court "may not ignore the [Federal Rule of Civil Procedure] 15(a)(2) considerations that favor affording parties an opportunity to test their claims on the merits," it has "considerable discretion to deny a post-judgment motion for leave to amend because such motions are disfavored." *United States ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 824 (8th Cir. 2009). "A district court may appropriately deny leave to amend 'where there are compelling reasons "such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment."'" *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005) (quoting *Hammer v. City of Osage Beach*, 318 F.3d 832, 844 (8th Cir. 2003)). "Unexcused delay is sufficient to justify the court's denial . . . if the party is seeking to amend the pleadings after the district court has dismissed the claims it seeks to amend, particularly when the plaintiff was put on notice of the need to change the pleadings before the complaint was dismissed, but failed to do so." *Id.*

The district court exercised its discretion in this case to deny Horras's motion, stating simply that it "[was] not required to give Horras an opportunity to amend his Complaint post-judgment." The ruling was not accompanied by additional explanation, but because it was placed in a footnote to the district court's analysis of Horras's Rule 59(e) and Rule 60(b) motions, we construe the basis for the denial of leave to amend to be Horras's unexcused delay. *See, e.g.*, *Horras v. American Capital Strategies, Ltd.*, No. 4:11-cv-00553-JEG-CFB, slip op. at 3 (S.D. Iowa Nov. 16, 2012) ("Horras made a conscious decision to refrain from filing an amended complaint . . . at any time prior to dismissal."); *id.* at 3-4 ("Horras could have moved for leave to amend his Complaint at any time before the Court granted Defendant's Motion to Dismiss; Horras failed to take any such action."); *id.* at 4-5 ("Horras had every opportunity to request leave to amend pre-dismissal. . . . The Court held a hearing regarding the Motion to Dismiss on March 26, 2012. At that hearing, Horras'[s] attorney stated the initial Complaint was a model of pleading that did not

require any further factual support."). The record makes clear that Horras never sought to amend the complaint until after dismissal, despite being "put on notice" of the need to amend by both the district court and ACS. *Moses.com*, 406 F.3d at 1065. We therefore hold that the district court did not abuse its "considerable discretion," *Hypoguard*, 559 F.3d at 824, in concluding that it was not required to allow Horras to amend the complaint post-judgment.

IV.

For the foregoing reasons, we affirm.

COLLOTON, Circuit Judge, concurring in the judgment in part and dissenting in part.

Thomas Horras alleges that in 2007, he was a shareholder of a corporation named Auxi, Inc. According to his complaint, another shareholder, American Capital Strategies, Ltd. ("ACS"), controlled Auxi through ACS's seats on the board of directors. Horras asserts that when ACS initiated the sale of Auxi, Inc., to Harden Health Care LLC ("HHC") in 2007, without notice or accounting to Horras, ACS breached a fiduciary duty that it owed to him and caused him damages. The district court dismissed the complaint, and Horras appeals.[4]

Horras's theory on the fiduciary duty claim is that ACS owed the duties of a majority shareholder to a minority shareholder in a closely-held corporation, that ACS purported to sell all shares of Auxi to HHC (even though Horras owned shares that

---

[4]Horras also alleged a breach of contract, and I would affirm the dismissal of that claim. Horras did not plead that the contract between ACS and HHC manifests an intent to benefit Horras, *see Midwest Dredging Co. v. McAninch Corp.*, 424 N.W.2d 216, 224 (Iowa 1988); to the contrary, his theory is that ACS intended to squeeze him out and deprive him of any benefit. The district court then did not abuse its discretion by denying leave to amend based on undue delay.

were overlooked or deliberately ignored), and that ACS breached a fiduciary duty to Horras by failing to notify him of the sale and by failing to compensate him for a portion of the proceeds that ACS received from HHC in exchange for a purported sale of all Auxi shares.

If Horras could prove this series of events, then it is likely that the Iowa Supreme Court would recognize a breach of fiduciary duty. Iowa law recognizes that "majority shareholders do owe a fiduciary duty to minority shareholders," *Linge v. Ralston Purina Co.*, 293 N.W.2d 191, 193, 194 (Iowa 1980), and that duty is heightened in the context of close corporations because of the vulnerability of minority shareholders. *See Cookies Food Prods., Inc. v. Lakes Warehouse Distrib., Inc.*, 430 N.W.2d at 451-52; 12B William Meade Fletcher, *Cyclopedia of the Law of Corporations* § 5811.05 (2012). The Iowa court has not elaborated on the scope of this duty, but there is no reason to expect it would disagree with other jurisdictions that the duty "encompasses the obligation to act in good faith, to enter into transactions that are fair, and to fully disclose material facts." *Knaebel v. Heiner*, 663 P.2d 551, 552-53 (Alaska 1983) (citing cases). The Iowa Court of Appeals, consistent with courts in several other jurisdictions, has suggested that the fiduciary duties of those in a close corporation are analogous to duties that partners in a partnership owe to one another, *Jochimsen v. Wapsi Hunting Club, Inc.*, No. 10-1430, 2011 WL 2695272, at * 5 (Iowa. App. 2011), including a duty of "utmost good faith and loyalty." *S.E.C. v. Sargent*, 229 F.3d 68, 76 (1st Cir. 2000) (applying Massachusetts law); *see In re Cumberland Farms, Inc.*, 284 F.3d 216, 227 (1st Cir. 2002) (applying Massachusetts law); *G&N Aircraft, Inc. v. Boehm*, 743 N.E.2d 227, 241 (Ind. 2001); *Lawton v. Nyman*, 327 F.3d 30, 39 (1st Cir. 2003) (applying Rhode Island law); *Adams v. Catrambone*, 359 F.3d 858, 866 (7th Cir. 2004) (applying Illinois law); *Harris v. Mardan Bus. Sys., Inc.*, 421 N.W.2d 350, 353 (Minn. App. 1988); *see generally* 18 C.J.S. Corporations § 379.

A controlling shareholder may not use its controlling position to secure a pecuniary benefit without ensuring that such benefit "is made proportionally available to the other similarly situated shareholders or is derived only from the use of controlling position and is not unfair to other shareholders." *See* American Law Institute, Principles of Corporate Governance: Analysis and Recommendations § 5.11 (1994); *see generally* 1 F. Hodge O'Neal & Robert B. Thompson, *Oppression of Minority Shareholders and LLC Members* § 4:7 (Thompson/West 2005). There is debate in the law about whether a majority shareholder has a duty to share with the minority a "premium" that the majority receives for selling *its own* controlling block. O'Neal & Thompson, *supra*, § 4:7. But there is no authority suggesting that a majority shareholder may retain a premium received for purporting to sell *all* shares of the company when the majority does not in fact own the entire company. The scenario outlined by Horras, if true, states a claim that ACS breached a fiduciary duty by failing to disclose to a minority shareholder that it was entering into a transaction to sell all shares of Auxi to HHC and by failing to account for proceeds obtained based on the purported sale of all company shares.

The majority does not suggest that the Iowa courts would find no breach of duty in that situation, but affirms the dismissal on the ground that Horras did not adequately plead the scenario that he argues. *Ante*, at 7 n.3.[5] In my view, this conclusion overstates the effect of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell*

---

[5]The majority, *ante*, at 7 n.3, also says that Horras argues "[f]or the first time on appeal" that ACS's fiduciary duty was analogous to that of a partner in a partnership, and that "ordinarily" the court does not consider an argument raised for the first time on appeal. As noted, a partner owes his partners a duty of "utmost good faith and loyalty." Horras argued in the district court that ACS, as a controlling shareholder, owed a duty of "complete loyalty, honesty, and good faith." R. Doc. 9-1, at 4. That Horras cited additional authority, *Jochimsen*, to bolster the argument he made in the district court is not a ground for refusing to consider the argument. In any event, the majority ultimately does not rely on a waiver by Horras, but proceeds to the merits.

*Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To be sure, *Twombly*, 550 U.S. at 561-63, overruled *Conley v. Gibson*, 335 U.S. 41 (1957), and the old "no set of facts" standard under which virtually any complaint survived a motion to dismiss unless the plaintiff affirmatively pleaded himself out of court. *E.g.*, *Thomas v. Farley*, 31 F.3d 557, 558-59 (7th Cir. 1994). *Twombly* makes clear that a plaintiff must plead "more than labels and conclusions," and "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555. Rule 8(a) requires that there must be "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

This is an important development, but we must be careful not to embellish it. The Court pointedly reminded us in a summary reversal issued two weeks after *Twombly* that the federal rules require only notice pleading through "'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (internal quotation omitted). *Iqbal* says that *Twombly* applies to all civil actions, 556 U.S. at 684, but *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002), reaffirmed by *Twombly*, 550 U.S. at 555-56, provides that the simplified notice pleading standard of Rule 8(a) likewise applies to all civil actions (with limited exceptions not applicable here), and "relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." 534 U.S. at 512.

Horras's complaint alleged that ACS controlled Auxi at the time of its sale in 2007, initiated the sale of Auxi to HHC, and received payment for its shares, but failed to notify Horras of corporate activity affecting his shares or to pay Horras for his shares. The majority's footnote three deems this pleading insufficient notice of the claim outlined above, because it did not specifically allege that Auxi was closely held (only that it was "a Delaware corporation") and did not specifically assert that

-13-

ACS purported to sell "all" shares of Auxi. The complaint was insufficient on this view, because Horras's Count I on breach of fiduciary duty said only that ACS initiated "corporate activity [a]ffecting his shares," even though Count II on breach of contract alleged that ACS "represented *all* shares of Auxi would be sold to HHC." So the defendant supposedly was not on fair notice that Count I alleged a purported sale of all shares or that Auxi was closely held.

These criticisms of the complaint bring to mind the technical requirements of the code pleading regime that was superseded by the federal rules and the simplified notice pleading approach. *See* Charles E. Clark, *The Influence of Federal Procedural Reform*, 13 Law & Contemp. Probs. 144, 154-55 (1948); Charles E. Clark, *Simplified Pleading*, 2 F.R.D. 456, 458-60 (1943). Since 1948, after all, it has been sufficient to allege a negligence claim in one sentence: "On <u>date</u>, at <u>place</u>, the defendant negligently drove a motor vehicle against the plaintiff." Fed. R. Civ. P. 84 & App., Form 11. Would the majority say that this "singular allegation" fails to state a claim because it does not specify that the defendant ran through a red light? Under the simplified pleading standard of Rule 8(a), I think the complaint here was sufficient to give ACS fair notice of the fiduciary duty claim that Horras has amplified in his briefing.

The availability of information in this case is asymmetrical. ACS presumably knows what happened in the sale of Auxi shares to HHC; Horras evidently does not know much. The litigation likely would entail simple, relatively inexpensive discovery about the Auxi corporation and the transaction with HHC, after which a motion for summary judgment may well be in order if there is insufficient evidence to support Horras's theory. But at this early stage of the proceeding, I would reverse the judgment dismissing the fiduciary duty claim and remand for further proceedings.

_____

-14-