# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2578

_____

United States of America

*Plaintiff - Appellant*

v.

Mask of Ka-Nefer-Nefer

*Defendant - Appellee*

Art Museum Subdistrict of the Metropolitan Zoological Park and Museum District
of the City of St. Louis and the County of St. Louis

*Claimant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 13, 2014
Filed: June 12, 2014

_____

Before LOKEN, MURPHY, and SMITH, Circuit Judges.

_____

LOKEN, Circuit Judge.

The issue raised on this appeal is whether the district court[1] abused its discretion in denying the government's post-dismissal motion for leave to file an amended civil forfeiture complaint. Underlying that issue is an attempt to expand the government's forfeiture powers at the likely expense of museums and other good faith purchasers in the international marketplace for ancient artifacts. We affirm the district court's procedural ruling and therefore leave this important substantive issue for another day.

## I.

The district court dismissed the government's forfeiture complaint for failure to state a claim, so we are limited to the pleaded facts. The government's notice of appeal included the district court's Order of Dismissal, but the Statement of the Issue section of the government's brief stated that the only issue on appeal is whether the court abused its discretion in denying a post-dismissal motion for leave to file an amended complaint. The Statement in the brief is controlling. See F.R.A.P. 28(a)(5); Solomon v. Petray, 699 F.3d 1034, 1037 n.2 (8th Cir. 2012). Therefore, the appeal of the Order of Dismissal has been waived, and we need not be concerned about the truth of the pleaded facts.

The forfeiture complaint alleged that the Mask of Ka-Nefer-Nefer is a 3,200-year-old Egyptian mummy cartonnage discovered in 1952 by an archeologist working for the Egyptian government and registered as government property. The Mask was housed in a storage facility in Saqqara, Egypt, until 1959, when it was sent to the Egyptian Museum in Cairo for use with an exhibit in Tokyo, Japan. The Mask never went to Japan, instead returning to Saqqara in 1962. In 1966, a box containing the Mask and other artifacts was sent to a restoration lab in Cairo to prepare the artifacts

[1] The Honorable Henry E. Autrey, United States District Judge for the Eastern District of Missouri.

for display. When the Egyptian Museum in Cairo inventoried the box's contents in 1973, the Mask was gone. The Egyptian government's register of antiquities showed no transfer to a private party between 1966, when the Mask was last seen, and 1973. In 2006, the Egyptian government learned that the Art Museum Subdistrict of the Metropolitan Zoological Park and Museum District of the City and County of St. Louis (the "Museum") purchased the Mask in 1998. The Museum refused the Egyptian government's repeated requests to return the Mask.

At a January 2011 meeting with Museum attorneys, representatives of the United States threatened to bring a forfeiture proceeding against the Mask unless the Museum voluntarily surrendered it. The Museum responded by filing a declaratory judgment action in the Eastern District of Missouri. Reciting the Museum's conflicting version of the historical facts, and asserting that any forfeiture claim would be time-barred by the applicable statute of limitations in 19 U.S.C. § 1621, the Museum sought a declaration that the Mask is not subject to forfeiture. The Art Museum Subdist. of the Metro. Zoological Park & Museum Dist. of St. Louis v. United States, No. 4:11-cv-00291 (E.D. Mo. filed Feb. 15, 2011). The United States rejoined on March 16, filing a motion to stay the Museum's declaratory action and a verified civil forfeiture complaint under 19 U.S.C. § 1595a(c). Part of the Tariff Act of 1930, this statute now provides, in relevant part: "Merchandise which is introduced or attempted to be introduced into the United States contrary to law shall be . . . (1) . . . seized and forfeited if it -- (A) is stolen, smuggled, or clandestinely imported or introduced." The district court granted the government's motion to stay the Museum's declaratory judgment action pending resolution of the forfeiture case.

The forfeiture complaint alleged that the Mask was "missing" after 1966 because it had been stolen and smuggled out of Egypt. "Because the Mask was stolen," the complaint concluded, "it could not have been lawfully exported from Egypt or lawfully imported into the United States." The Museum filed a timely claim that it owned the Mask and moved to dismiss the complaint for failure to state a

-3-

claim, alleging that the government's complaint lacked facts supporting the claim with the detail required by Supplemental Rules E(2)(a) and G(2)(f) to the Federal Rules of Civil Procedure, which govern civil forfeiture actions.[2] Specifically, the Museum argued, the complaint failed to allege detailed facts showing that "the Mask was stolen" and that it had been introduced into the United States "contrary to law." In a June 2011 Memorandum in Opposition, the government responded that its complaint need only plead "facts [that] provide probable cause[3] to believe that the Mask was stolen from Cairo, and that therefore its importation into the United States in 1998 was in violation of 19 U.S.C. § 1595a."

More than one year after the forfeiture complaint was filed, the district court granted the Museum's motion to dismiss. United States v. Mask of Ka-Nefer-Nefer, No. 4:11CV504, 2012 WL 1094658 (E.D. Mo. Mar. 31, 2012). The memorandum opinion explained that the complaint's "one bold assertion that because something went missing from one party in 1973 and turned up with another party in 1998, it was therefore stolen and/or imported or exported illegally" did not plead sufficiently detailed facts showing (1) that the Mask was "stolen, smuggled, or clandestinely imported or introduced" into the United States, and (2) "facts related to some predicate unlawful offense, presumably a law with some 'nexus' to international

---

[2]Supp. Rule E(2)(a) provides that a civil forfeiture complaint "shall state the circumstances from which the claim arises with such particularity that the . . . claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Rule G(2)(f) provides that the complaint *must* "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial."

[3]In civil forfeiture actions under the customs laws in Title 19, if the government shows probable cause that the property is subject to forfeiture, the claimant has the burden to prove it is not. See 19 U.S.C. § 1615; United States v. Davis, 648 F.3d 84, 95-96 (2d Cir. 2011). Congress gave claimants a more favorable burden of proof in the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), but excluded Title 19 forfeiture provisions from that reform. See 18 U.S.C. § 983(i)(2)(A).

commerce from which the Title 19 customs regulation arises." The court cited <u>Davis</u>, a decision in which the Second Circuit discussed "The Meaning of 'Contrary to Law'" in 19 U.S.C. § 1595a(c). 648 F.3d at 89-90.

On April 6, the government filed a Motion for Enlargement of Time To File Motion for Reconsideration and/or To Seek Leave To File Amended Complaint Prior to Entry of Judgment. The government asserted that it would move to reconsider because the court's Order dismissed only the complaint and not the underlying action but would also seek relief under Rules 59(e) and 60(b)(6) if the court "construes its Order as . . . a dismissal of the 'action.'" In a docket text order entered April 10, the court granted the government "until 5-7-12 to file what it suggests is a motion to reconsider." The text notice stated: "WARNING: CASE CLOSED on 3/31/2012."[4]

On May 7, the government filed its motion to reconsider, arguing that the court had misunderstood the pleading standard governing civil forfeiture actions under 19 U.S.C. § 1595a(c)(1)(A). The Memorandum in Support more fully disclosed the litigation strategy underlying the bare-bones forfeiture complaint. Citing the statute's "plain text" but no supporting case law, the government asserted: "Section 1595a itself prohibits the importation of stolen property into the United States, regardless

---

[4]On appeal, the government repeatedly complains that the district court's failure to clarify whether its March 31 dismissal was a final order justified the government's delay in moving for leave to amend. We disagree. The court's April 10 docket order expressly stated, "CASE CLOSED on 3/31/2012." Government counsel simply was not paying attention. Moreover, we ruled many years ago that, unless leave to amend is explicitly granted in a dismissal order, "the dismissal is a final, appealable order." <u>Quartana v. Utterback</u>, 789 F.2d 1297, 1299 (8th Cir. 1986). This rule was reinforced by the 2009 amendment to Rule 15(a)(1)(B), which limited a party's time to amend its pleading as of right to "21 days after service of a motion under rule 12(b)." The Advisory Committee Notes explained, "This provision will force the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion." Again, government counsel was not paying attention.

-5-

of whether any other law has been violated in the process of importation." The Memorandum explained away Davis and other earlier contrary decisions as reflecting assumptions made by those courts based on burdens of proof "the government may have assumed" in those cases. That explanation may fit some of the opinions, but it does not fit all the § 1595a precedents we have found. See United States v. 57,261 Items of Drug Paraphernalia, 869 F.2d 955, 956 (6th Cir.) (Customs agents "made the seizure under the remedial provisions for civil forfeiture found in . . . 19 U.S.C. § 1595a(c) . . . in combination with . . . the 1986 statute making it 'unlawful for any person . . . to import or export drug paraphernalia"), cert. denied, 493 U.S. 933 (1989);[5] United States v. One 1970 Ford Pick-Up Truck, 537 F. Supp. 368, 370 (N.D. Ohio 1981) ("The government . . . had the burden of showing . . . probable cause to believe the goods were introduced into the United States contrary to law. This the government did, with evidence . . . the [bonded] containers were broken into.").

The significance of this issue seems quite clear. The "stolen merchandise" subsection, § 1595a(c)(1)(A), was added by a 1993 amendment. In the reported cases we have found where the government sought forfeiture under this subsection, the claim has been that importation of the stolen merchandise violated the National Stolen Property Act ("NSPA"), 18 U.S.C. §§ 2314, 2315, see, e.g., United States v. A 10th Cent. Cambodian Sandstone Sculpture, No. 12 Civ. 2600, 2013 WL 1290515 at *6 (S.D.N.Y. Mar. 28, 2013), or Customs statutes that criminalize the smuggling of merchandise into this country, see 18 U.S.C. §§ 542, 545; United States v. Broadening-Info Ents., 462 F. App'x 93, 96 (2d Cir. 2012). In Davis, the Second Circuit held that the NSPA had the requisite nexus to international commerce to suffice "as a basis for [the government's] invocation of Section 1595a." 648 F.3d at 90. A violation of the NSPA requires proof that valuable merchandise was transported in foreign commerce "knowing the same to have been stolen, converted

---

[5]Overruled in part on other grounds, Posters 'N' Things, Ltd. v. United States, 511 U.S. 513, 518-19 (1994).

or taken by fraud." § 2314. In <u>United States v. Portrait of Wally</u>, 663 F. Supp. 2d 232, 269 (S.D.N.Y 2009), the government was denied summary judgment on its § 1595a claim, despite sufficient evidence that the painting was stolen, because the court found that whether "the Museum imported *Wally* into the United States *knowing* it was either stolen or converted" was a genuine issue of disputed fact. Although the government has been granted summary judgment on this issue in other cases,[6] the stand-alone interpretation of the "contrary to law" element urged in this case, if adopted, would greatly enhance the government's forfeiture power under § 1595a, without any clear basis in the statute's text for this enhancement. The issue may be unresolved, but precedent and past practice do not favor the government's position.[7]

The government's motion to reconsider did not cite an applicable Federal Rule -- a dangerous omission -- and again requested that the Court grant "an opportunity before entry of judgment to move for leave to file an amended complaint." On May 23, the government filed a now-frivolous motion to clarify whether the March 31 Order was a final order, requesting an extension of time to appeal if it was. The district court denied the motion to reconsider on June 1. Reciting the standards governing Rule 59(e) motions, the court concluded the government offered "nothing new" and identified no "severe mistake" in the original decision. The court denied the motion to clarify and granted an extension of time to appeal to July 1, 2012.

---

[6]<u>See</u> <u>United States v. An Antique Platter of Gold</u>, 991 F. Supp. 222, 231-32 (S.D.N.Y. 1997), <u>aff'd on other grounds</u>, 184 F.3d 131, 134 (2d Cir. 1999), <u>cert. denied</u>, 528 U.S. 1136 (2000).

[7]Particularly in light of the congressional attitude reflected in CAFRA, the Executive Branch should anticipate judicial resistance to expansion of the "punitive and remedial jurisprudence" that has long permitted forfeiture of property acquired by non-culpable parties. <u>See</u> <u>Union Pac. R.R. v. U.S. Dep't of Homeland Sec.</u>, 738 F.3d 885, 894 (8th Cir. 2013), noting the views on this question expressed in the four separate opinions in <u>Bennis v. Michigan</u>, 516 U.S. 442 (1996).

On June 8, the government for the first time filed a motion for leave to amend its complaint and a proposed amended complaint, citing Rules 15(a)(2), 59(e), and 60(b)(1). The amended complaint contained a number of new factual allegations purporting to cure the defects in its prior complaint relating to the "is stolen" and "contrary to law" elements of a forfeiture claim under 19 U.S.C. § 1595a. On June 28, the court denied the motion for the reasons stated in its March 31 and June 1 Orders. The government timely filed its notice of appeal on June 29.

## II.

**A.** The government asserts in the Argument section of its brief that the district court departed from "typical practice" when it dismissed the complaint without inviting the government to amend. This is an attack on the March 31 Order of Dismissal that was not included in the Statement of the Issue on appeal. In any event, whatever may be "typical" in other jurisdictions, Eighth Circuit law has long been to the contrary. In Wolgin v. Simon, for example, where plaintiff requested leave to amend if the court granted defendants' motion to dismiss, we *held* "that to preserve the right to amend a complaint a party must submit a proposed amendment along with its motion." 722 F.2d 389, 395 (8th Cir. 1983). Later decisions have stated, logically, that a district court in granting a motion to dismiss is not obliged to invite a motion for leave to amend if plaintiff did not file one. See Drobnak v. Andersen Corp., 561 F.3d 778, 787 (8th Cir. 2009); Carlson v. Hyundai Motor Co., 164 F.3d 1160, 1162 (8th Cir. 1999). Here, the government failed to request leave to amend in the eleven months between the Museum's motion to dismiss and the court's Order of Dismissal, choosing instead to stand on and defend its original complaint. The district court had no reason to question that litigation strategy.

**B.** Turning to the post-judgment motion for leave to file an amended complaint, it is well-settled that plaintiffs "remain free where dismissal orders do not grant leave to amend to seek vacation of the judgment under Rules 59 and 60[b] and

offer an amended complaint in place of the dismissed complaint." Quartana, 789 F.2d at 1300. But it is also well-settled that "district courts in this circuit have considerable discretion to deny a [timely] post-judgment motion for leave to amend because such motions are disfavored, but may not ignore the Rule 15(a)(2) considerations that favor affording parties an opportunity to test their claims on the merits." United States ex rel. Roop v. Hypoguard USA, Inc., 559 F.3d 818, 823-24 (8th Cir. 2009). Leave to amend will be granted if it is consistent with the stringent standards governing the grant of Rule 59(e) and Rule 60(b) relief. See Dorn v. State Bank of Stella, 767 F.2d 442, 443-44 (8th Cir. 1985); Acevedo-Villalobos v. Hernandez, 22 F.3d 384, 389 (1st Cir.), cert. denied, 513 U.S. 1015 (1994).

Although the government's motion for leave to amend cited both Rule 59(e) and Rule 60(b), the Rule 59(e) motion was untimely. Rule 59(e) provides that the motion must be filed within twenty-eight days of "the entry of the judgment" it challenges. Here, the government asserted that its June 8 motion for leave to amend was timely under Rule 59(e) because its prior Rule 59(e) motion to reconsider extended the 28-day time period. We need not consider that question of "tolling" because the government filed its motion to reconsider on May 7, thirty-five days after entry of the Order of Dismissal. Rule 59(e)'s 28-day time limit *may not be extended.* See Rule 6(b)(2). Therefore, the district court's grant of an extension to May 7 was a nullity, and no timely Rule 59(e) motion was ever filed. As a district court lacks jurisdiction over an untimely Rule 59(e) motion, that rule could not support the government's motion for leave to amend. See Reyher v. Champion Int'l Corp., 975 F.2d 483, 489 (8th Cir. 1992).

A district court has discretion under Rule 60(b) to grant post-judgment leave to file an amended complaint if the motion is "made within a reasonable time," Rule 60(c)(1), and the moving party shows "exceptional circumstances" warranting "extraordinary relief." United States v. Young, 806 F.2d 805, 806 (8th Cir. 1986), cert. denied, 484 U.S. 836 (1987). We review the district court's denial of leave to

amend under Rule 60(b) for abuse of discretion.  See Horras v. Am. Capital Strategies, Ltd., 729 F.3d 798, 804 (8th Cir. 2013), cert. denied, 134 S. Ct. 1346 (2014); Young, 806 F.2d at 806.  "Rule 60(b) was not intended as a substitute for a direct appeal from an erroneous judgment." Spinar v. S.D. Bd. of Regents, 796 F.2d 1060, 1062 (8th Cir. 1986) (quotation omitted).  Thus, the proper recourse when the government disagreed with the district court's interpretation of the "is stolen" and "contrary to law" terms of the statute was a direct appeal, not a Rule 60(b) motion.[8]

We have recognized that the normal standards for granting Rule 60(b)(1) relief "seem ill-suited" to determining when a plaintiff whose complaint has been dismissed "should be permitted, post-judgment, to try again." Roop, 559 F.3d at 823.  The tension is reflected in seemingly inconsistent opinions regarding the relevance of a plaintiff's delay in seeking leave to amend.  Numerous cases have ruled that "[u]nexcused delay is sufficient to justify the court's denial if the party is seeking to amend the pleadings after the district court has dismissed the claims it seeks to amend, particularly when the plaintiff was put on notice of the need to change the pleadings before the complaint was dismissed, but failed to do so." Horras, 729 F.3d at 804, quoting Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc., 406 F.3d 1052, 1065 (8th Cir. 2005); see Hammer v. City of Osage Beach, 318 F.3d 832, 844 (8th Cir. 2003); In re NationsMart Corp. Sec. Litig., 130 F.3d 309, 322-23 (8th Cir. 1997), cert. denied, 524 U.S. 927 (1998).  That rule applies here.  The government knew many months prior to the Order of Dismissal of the possible need to amend its pleading and elected to "stand or fall" on its untested legal theory.  The government then spent another three months after the Order of Dismissal was entered urging the court to reconsider its interpretation of the statute before finally deciding it would attempt to plead around the interpretive problem, rather than appeal this legal issue.

---

[8]Even if the government preserved an appeal of the Order of Dismissal in arguing that the district court erred in not inviting leave to amend, the government did not argue these important statutory issues, so they are forfeited in this case.

-10-

In these circumstances, denial of leave to amend was hardly an abuse of the district court's substantial post-judgment discretion. See, e.g., NationsMart, 130 F.3d at 322-23.

On the other hand, other cases have stated that a plaintiff's non-prejudicial delay in seeking post-dismissal leave to amend is not sufficient reason to deny leave to add a legal theory or an additional defendant, or to cure a jurisdictional defect. See Roberson v. Hayti Police Dep't, 241 F.3d 992, 993-94, 995-96 (8th Cir. 2001); Sanders v. Clemco Indus., 823 F.2d 214, 216-17 (8th Cir. 1987); Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 644 F.2d 690, 691-92, 694 (8th Cir. 1981). Although the opinions were broadly worded, these cases all presented situations where the amendment was needed to afford plaintiff "an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962). Here, by contrast, the Museum's declaratory judgment action is still pending. While the government's procedural intransigence caused the dismissal of the procedure it preferred, the district court could reasonably assume that the Museum's claim in that parallel action will provide an opportunity to "test the merits" of whether the Mask is subject to forfeiture under 19 U.S.C. § 1595a.

Finally, the government argues that the district court's "denial of the motion for leave to amend without explanation constituted a clear abuse of discretion," citing Foman, 371 U.S. at 182 ("outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion"). Here, of course, the district court did give a reason, denying leave to amend for the reasons stated in its prior orders. Our review of the proposed amended complaint confirms the basis for this ruling. Paragraph 99 of that proposed pleading alleged that importation of the Mask violated eight different federal, state, and foreign laws, including § 1595a and the NSPA, "[t]o the extent that it is necessary to independently establish the existence of a predicate offense." By no stretch of the imagination would some of the cited laws have the "nexus to international commerce" that the Order of Dismissal required

-11-

as a matter of law. In other words, the government in the proposed amended complaint continued to plead a claim that did not require proof the Mask was "introduced into the United States contrary to law," only proof that, at some time in the distant past, it was "stolen." Thus, as in Roop, the district court did not abuse its discretion in denying leave to amend because the proposed amended complaint "did not cure the . . . deficiencies in the initial Complaint." 559 F.3d at 824.

We affirm the orders of the district court and grant the Museum's motion to supplement the record on appeal.

MURPHY, Circuit Judge, concurring.

I concur in the court's opinion but write separately to express my concern about what the record in this case reveals about the illicit trade in antiquities. The government's motion was untimely under Rule 59(e), and I agree that the district court did not abuse its discretion by denying post judgment relief under Rule 60(b). The government was dilatory and failed to demonstrate "exceptional circumstances" at this point of the case, United States v. Young, 806 F.2d 805, 806 (8th Cir. 1986), while the museum's declaratory judgment action is pending.

The substantive issues underlying this litigation are of great significance, and not only to museums which responsibly seek to build their collections. The theft of cultural patrimony and its trade on the black market for stolen antiquities present concerns of international import. These issues affect governments and the international art and antiquities markets, as well as those who seek to safeguard global cultural heritage. Because of such concerns the United States has elsewhere brought multiple civil forfeiture actions against what have been identified as stolen antiquities and works of art. See, e.g.,United States v. An Antique Platter of Gold, 184 F.3d 131, 134 (2d Cir. 1999) (in rem civil forfeiture action brought in 1995).

In this matter the United States attempted to bring its claim under 19 U.S.C. § 1595a without pleading a violation of any other statute such as the National Stolen Property Act (NSPA), 18 U.S.C. § 2314, and thus avoiding the NSPA's knowledge requirement. The government has successfully used civil forfeiture in the past to recover an object of cultural relevance without pleading a violation of a "predicate" statute. See United States v. One Lucite Ball Containing Lunar Material, 252 F. Supp. 2d 1367, 1379 (S.D. Fla. 2003) (government met probable cause burden that moon rock was "stolen" under § 1595a(c) by demonstrating that Honduras had title and had not authorized transfer, even though the rock had been brought into the United States). Here, the government pled in its proposed amended complaint that the dealers and the Saint Louis Art Museum "knew or were willfully blind" to facts including the Mask's ownership by Egypt, ineligibility for private ownership, and lack of a proper license.[9]

Even good faith purchasers of art and ancient artifacts are required to be conscientious regarding provenance. As the Second Circuit noted in United States v. Davis, the "innocent owner" defense of the Civil Asset Forfeiture Reform Act (CAFRA) is not available to claimants under § 1595a. 648 F.3d 84, 93–95 (2d Cir. 2011). The drafters of CAFRA made the deliberate decision to exclude such claimants from such a defense. The nature of civil forfeiture under § 1595a is that even innocent owners may have to forfeit their property. Id. at 93. CAFRA's drafters similarly exempted customs actions from that law's more claimant friendly burden of proof. Id. at 95–96.

In Davis, the Second Circuit assumed without deciding that a nexus to international commerce is required in a civil forfeiture action under § 1595a. Noting

---

[9] The mask was sold to the museum in 1998 by Phoenix Ancient Art, S.A. The proposed amended complaint alleges that the owners, Ali and Hicham Aboutaam, were each convicted in 2004 of smuggling ancient artifacts.

the strength of a literal interpretation of the statute, the court also recognized a "strong argument" that § 1595a(c)'s contrary to law language "means exactly what it says: the government may seize and forfeit merchandise that is introduced into the United States illegally, unlawfully, or in a manner conflicting with established law, regardless of whether the law violated relates to customs enforcement." Davis, 648 F.3d at 90. As the court acknowledges in this case, the NSPA provides a sufficient nexus to international commerce. See Davis, 648 F.3d at 90. I therefore do not agree that the government failed to cure its prior complaint's deficiencies by listing other statutes as well as the NSPA in its amended complaint.

While this case turns on a procedural issue, courts are bound to recognize that the illicit sale of antiquities poses a continuing threat to the preservation of the world's international cultural heritage. Museums and other participants in the international market for art and antiquities need to exercise caution and care in their dealings in order to protect this heritage and to understand that the United States might ultimately be able to recover such purchases.

_____

-14-